ERIC D. OLSON, State Bar No. 198373
JOSEPH S. PARK, State Bar No. 322066
SOOJIN YOUN, State Bar No. 331888
LEE, HONG, DEGERMAN, KANG & WAIMEY
660 South Figueroa Street, Suite 2300
Los Angeles, California 90017
Telephone: (213) 623-2221
Facsimile:  (213) 623-2211
Email: eolson@lhlaw.com; jpark@lhlaw.com
syoun@lhlaw.com

W. TODD MILLER (*pro hac vice* forthcoming)
BAKER & MILLER PLLC
2401 Pennsylvania Avenue NW, Suite 300
Washington, D.C. 20037
Telephone: 202.663.7822
Facsimile: 202.663.7849
tmiller@bakerandmiller.com

Attorneys for Plaintiff HMM Co., Ltd.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HMM Co., Ltd., a Korean corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR<br>(1) BREACH OF MARITIME CONTRACT; AND (2) GOODS AND SERVICES RENDERED** |

-1-
COMPLAINT

Plaintiff HMM Co., Ltd. (hereinafter, "HMM"), alleges for its Complaint against Defendant Samsung Electronics America, Inc. ("SEA") as follows:

## PRELIMINARY STATEMENT

1. This is a maritime suit under 28 U.S.C. 1333(1) and F.R.C.P. 9(h) to recover approximately $13 million in unpaid shipping fees and related costs, including detention, chassis, demurrage, rail ramp storage and other charges and expenses related to the ocean transport of cargo by HMM for and on behalf of Defendant Samsung Electronics America, Inc. and its international affiliates. Under the parties' agreements and applicable maritime law, SEA is directly responsible to HMM for those unpaid charges under the relevant maritime service contracts, sea waybills, and HMM's applicable terms and conditions of transport. The charges in dispute are summarized in the charts attached hereto as **Exhibits A through E**, which are incorporated herein by reference and described more fully below.

## THE PARTIES

2. HMM is, and at all times mentioned herein was, a corporation duly organized under the laws of the Republic of Korea ("Korea"). HMM is now and at all times herein material was, a vessel operating common carrier engaged in the business of carrying goods, primarily by sea. HMM does not maintain any offices, facilities, or employees in the United States.

3. HMM is the parent of subsidiary HMM (America), Inc. ("HMMA"), a California corporation with a principal place of business in Irving, Texas. HMMA, in turn, is the parent of HMM America Shipping Agency, Inc. ("HASA"), also a California corporation with a principal place of business in Irving, Texas. HMMA and HASA personnel regularly communicate with HMM's United States customers, including Defendant SEA, concerning shipping operations, logistics, and billing issues.

4. Defendant Samsung Electronics America, Inc. is now, and at all material times herein was, a New York corporation with its principal place in the

State of New Jersey. SEA is a subsidiary of Samsung Electronics Co., Ltd. ("Samsung Korea"), a Korean corporation that is a global manufacturer and marketer of electronic goods and information technology. SEA is registered to do business in the State of California, and it maintains multiple offices, facilities, research centers, and other business operations in the State of California and throughout the United States.

5.  HMM is informed and believes and on that basis alleges that during the time relevant to this action, SEA maintained multiple business offices and facilities within the Central District of California, including, but not limited to, facilities in Santa Ana, CA; Los Angeles, CA; Compton, CA; Buena Park, CA; and/or Irvine, CA—all located within the Central District of California. HMM is further informed and believes and on that basis alleges that many of SEA's operations, shipping, and logistics personnel, including individuals involved in transactions with HMM, are located in its Santa Ana, CA office, located at 3 MacArthur Place, Santa Ana, CA 92707.[1]

6.  HMM is informed and believes, and on that basis alleges, that SEA serves as the U.S. agent for Samsung Korea and other international Samsung-affiliated entities, such as Samsung Electronics Logitech Co., Ltd. ("Samsung Logitech"); Samsung SDS Co., Ltd. ("Samsung SDS"); Samsung SDS Asia Pacific PTE. Ltd. ("Samsung SDS Asia"); Samsung SDS Global SCL (Thailand) ("Samsung SDS Global"); and Samsung Electronics HCMC CE Complex

---

[1] Additionally, according to the terms of use of Samsung's United States-based website found at https://www.samsung.com/us/common/legal/, SEA "owns and operates" that website, which among other things specifically promotes the SEA (or SEA-affiliated) Samsung Executive Briefing Center in Irvine, CA, within the Central District (see https://www.samsung.com/us/business/about-us/executive-briefing-center/irvine-california/.)

("Samsung HCMC"), among others (collectively referred to as the "Samsung Affiliates").

7. Over the course of many years, SEA consistently has been designated as the Consignee to receive shipments of goods carried by HMM and shipped by Samsung Korea and the other Samsung Affiliates. Not only has SEA consistently been the party to receive and take physical possession of those goods over a multi-year course of conduct, it regularly receives invoices from HMM (and has done so for several years, since at least 2016) and pays the fees and charges related to those shipments and other shipments made to other Samsung entities based in the U.S., such as Samsung Austin Semiconductor (Texas), including the same types of charges at issue in this dispute such as detention, demurrage, chassis, and rail ramp storage fees, among others.

## JURISDICTION AND VENUE

8. This is a suit for unpaid detention, chassis, demurrage, rail ramp storage and other miscellaneous charges and expenses related to the transport of cargo through maritime activity, pursuant to maritime contracts, including service contracts, sea waybills, and tariffs filed with the Federal Maritime Commission (FMC). These claims therefore comprise admiralty and maritime claims pursuant to 28 U.S.C. 1333(1) and Rule 9(h) of the Federal Rules of Civil Procedure, over which this court has subject matter jurisdiction.

9. Alternatively, this court also has subject matter jurisdiction pursuant to 28 U.S.C. 1332(a)(2), in that the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of a State and citizens or subjects of a foreign state.

10. This Court has both general and specific personal jurisdiction over Defendant SEA, which as alleged above, conducts substantial business in the State of California giving it the necessary minimum contacts with the state to satisfy due process concerns necessary to establish general jurisdiction. This includes owning

and operating various business offices and facilities within the State of California, including several locations within this judicial district such as its shipping logistics and operations center in Santa Ana, California.

11. Alternatively, the exercise of specific jurisdiction over SEA is appropriate because of SEA's substantial connections to the state with regard to the particular controversy at issue. This is a shipping fee dispute in which a large percentage of the shipping transactions at issue involved the discharge of cargo at terminals the Port of Los Angeles and Port of Long Beach ("Ports of Discharge" or "POD"), both located within the Central District of California.

12. Even though this dispute involves some transactions where cargo was discharged at various other port facilities in the United States outside of this District, the facts related to those transactions and their related fees and charges are substantially connected factually such that they are so related that they form part of the same case or controversy under Article III of the United States Constitution, the maritime laws of the United States, and to the extent applicable to these proceedings, within the meaning of 28 U.S.C. § 1367.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant SEA, at all relevant times, resided within this judicial district within the meaning of 28 U.S.C. § 1391(c)(2), as further alleged above. Venue also is proper in this District under 28 U.S.C. § 1391(b)(2) because, as alleged above, a substantial part of the events or omissions giving rise to HMM's claims occurred within this judicial district which contains the PODs for many of the subject shipping transactions.

14. Jurisdiction and venue within this District also are supported by the relevant contract documents. In each of the subject transactions, the relevant sea waybills include the following identical clause integrating and incorporating the terms and conditions of HMM's Standard Bill of Lading:

  4. Subject to the foregoing paragraphs, all the terms and conditions, including but not limited to exceptions, defenses and liberties, of the Carrier's Standard Bill of lading, which will be made available upon request, shall be deemed to be incorporated herein with logical amendments.

A true and correct copy of HMM's Standard Bill of Lading terms and conditions is attached hereto as **Exhibit F**.

  15. HMM's Standard Bill of Lading in turn provides the following relevant terms and conditions, which specifically include consignees such as SEA within all terms applicable to a "Merchant" under the Bill of Lading, including subjecting such consignees to joint and several liability with the other shipper-related parties:

  1. DEFINITIONS

  (F) "Merchant" includes the shipper, consignor, consignee, owner, and receiver of the Goods, and the holder of this Bill of Lading, **all of whom shall be jointly and severally liable to the Carrier for the payment of all freight, demurrage, damages for detention, and for the performance of the obligations of any of them under this Bill of Lading** or any charter party described in the face of this Bill of Lading.

  * * *

  28. CARRIER'S TARIFF

This Bill of Lading is issued subject to the Carrier's applicable tariff that is incorporated herein. Attention is drawn to the terms and conditions therein relating to free storage time and to additional charges including demurrage, damage for detention, per diem, storage expenses and legal fees, etc. Copies of the applicable tariff are obtainable from the Carrier or its agent upon request and the Merchant agrees to know and accept such Tariff. In case of inconsistency between this Bill of Lading and the applicable Tariff, this Bill of Lading shall prevail.

  29. GOVERNING LAW AND JURISDICTION

(A)   Any claims arising from or in connection with or relating to this Bill of Lading shall be exclusively governed by the law of Korea except as otherwise provided herein inclusive of this Article 2 and Article 3(A). Any and all action under or concerning this Bill of Lading (including, but not limited to, Loss of or Damage to the Goods) whether based on breach of contract, tort or otherwise shall be brought before the Seoul Civil District Court in Korea.

(B)   Notwithstanding Article 29(A) above, any and all **actions by Carrier against Merchant concerning freight and/or charges and/or any other expenses** incurred to Carrier for the reason that Merchant is responsible for, including but not limited to those charges in Article 28, **may be brought in the courts of any place where Merchant is subject to jurisdiction and the applicable laws or regulations of that jurisdiction shall apply to such actions by the Carrier against the Merchant**."

(Exhibit F [emphasis added].)

16.   In addition to the facts alleged above relating to Defendant SEA's business operations within this District, SEA is subject to the general and specific jurisdiction of the U.S. District Court for the Central District of California pursuant to the law and jurisdiction provisions of HMM's Standard Bill of Lading, including Section 29(B), because, among other reasons:

    a.   It is the designated consignee for shipments where the Port of Long Beach in Long Beach, California ("LGB") was the port of discharge ("POD"), and invoices for charges remain unpaid as follows:

        i.   Detention: 1,201 charges where the POD was LGB;

        ii.  Rail ramp storage: 26 charges where the POD was LGB;

        iii. Chassis: 192 charges where the POD was LGB; and

        iv.  Misc. B&C Costs: 25 charges where the POD was LGB.

  b. It is the designated consignee for shipments where the Port of Los Angeles ("LAX") was the port of discharge ("POD"), and invoices for charges remain unpaid as follows:

   i. Detention: 416 charges where the POD was LAX;

   ii. Chassis: 20 charges where the POD was LAX; and

   iii. Misc. B&C Costs: 2 charges where the POD was LAX.

  c. It is the invoiced party for three (3) shipments to consignee Samsung Austin Semiconductor (Texas), where charges for B&C Costs remain unpaid and LAX was the POD.

## FACTUAL ALLEGATIONS

17. This case arises out of HMM's carriage of goods by sea pursuant to maritime service contracts and non-negotiable sea waybills, for Defendant SEA's parent, Samsung Korea, and various of the Samsung Affiliates, as shippers, in which SEA served as consignee, agent, and/or invoiced party for delivery of goods and payment of fees, charges, and expenses.

18. In particular, HMM carried cargo from ports in Asia to ports in the U.S. for shippers, including the parent of Defendant SEA and various other of the Samsung Affiliates (also subsidiaries of Samsung Korea), in accordance with the terms and conditions of the sea waybills issued by HMM to Defendant SEA, and as subject to the rates and charges in its tariffs on file with the Federal Maritime Commission and published on HMM's website at https://www.hmm21.com/e-service/general/tariffRate/HmmTariff.do, including but not limited to, tariffs HDMU-040 and HDMU-047 and the rules published thereunder.

19. For each shipment, HMM issued a non-negotiable sea waybill which incorporates the terms of HMM's Standard Bill of Lading, which as alleged above, incorporates the terms and conditions of HMM's Standard Bill of Lading (Exhibit F attached hereto) into each contract of carriage, which are maritime contracts under United States law.

20.     The relevant ocean and intermodal carriage took place on multiple dates from approximately January 2021 through September 2023, with freight and other charges, including demurrage, detention, chassis, rail ramp storage and other miscellaneous charges and fees incurred in relation to each cargo container that was carried and/or moved by HMM. As described further below, summaries of the relevant transactions resulting in the charges at issue in this dispute are found in Exhibits A through E hereto. These charges were separately invoiced by HMM directly to SEA, the designated consignee of nearly all of the relevant shipments.

21.     Over the course of several months, HMM, both directly and via its U.S.-based subsidiaries, have corresponded and communicated directly with SEA regarding the unpaid charges, including by way of sending cumulative lists of unpaid charges to SEA by email on a weekly basis.

22.     As alleged above, Section 1(F) of the HMM's Standard Bill of Lading terms and conditions of carriage incorporated into each relevant sea waybill includes "consignee" within the definition of "Merchant." That Merchant clause further states that the "shipper, consignor, **consignee**, owner, and receiver of the Goods, and the holder of this Bill of Lading . . . shall be **jointly and severally liable** to the Carrier for the payment of all freight, demurrage, damages for detention" and other obligations under the bill of lading or sea waybill. (See Exhibit F.)

23.     Defendant SEA was the consignee for nearly all of the shipments pursuant to the sea waybills from which the unpaid charges arise and, consistent with the parties' longstanding, multi-year course of conduct, it was the party to whom HMM issued and directed the invoices at issue in this dispute.

24.     There are five categories of charges at issue in this action, including the following:

a.     **Detention**: Attached hereto as **Exhibit A**, and incorporated herein by reference is a chart detailing the 3,470 individual Detention charges at issue in this dispute. Detention charges are incurred when "equipment" such as

empty containers or truck chassis are not returned to the designated terminal or depot after delivery of cargo to Defendant within the agreed time limit. Between August 2021 and September 2023, HMM invoiced SEA a total of **$11,267,245.00** in Detention charges that have not been paid. Exhibit A identifies key information related to those unpaid Detention charges, including identification of Invoice No. and Date[2], B/L (sea waybill) number, Equipment (Container) No., Shipper and Consignee Names, Port of Discharge (POD), and Amount due.

        b.     **Demurrage**:  Attached hereto as **Exhibit B**, and incorporated herein by reference, is a chart detailing the seven (7) individual Demurrage charges at issue in this dispute. Demurrage charges are incurred when cargo is not collected by the recipient at the designated terminal or other agreed discharge point within the agreed time limit. Between August and September 2021, HMM invoiced SEA a total of **$8,480.00** in Demurrage charges that have not been paid. Exhibit B identifies key information related to those unpaid Demurrage charges, including identification of Invoice No. and Date, B/L (sea waybill) number, Equipment (Container) No., Shipper and Consignee Names, Port of Discharge, and Amount due.

        c.     **Chassis**:  Attached hereto as **Exhibit C**, and incorporated herein by reference, is a chart detailing the 1,124 individual Chassis charges at issue in this dispute. Chassis charges relate to the costs associated with renting or otherwise obtaining truck chassis for the moving of cargo shipping containers during intermodal transport.  Between August 2021 and September 2023, HMM invoiced SEA a total of **$948,070.00** in Chassis-related charges that have not been paid. Exhibit C identifies key information related to those unpaid Chassis charges,

---

[2] A small number of invoices listed in Exhibits A and C reflect invoice dates on various dates in late 2023 and early 2024. Those later invoices reflect re-issued invoices reflecting charges originally invoiced during the stated period.

including identification of Invoice No. and Date[3], B/L (sea waybill) number, Equipment (Container) No., Paired Equipment No., Shipper and Consignee Names, Port of Discharge, and Amount due.

      d.    **Rail ramp storage**: Attached hereto as **Exhibit D**, and incorporated herein by reference, is a chart detailing the fifty-three (53) individual Rail ramp storage charges at issue in this dispute. Rail ramp storage charges relate to the costs associated with cargo shipping containers that have not been moved from rail yard or related rail terminal facilities in a timely manner. Between January and March 2022, HMM invoiced SEA a total of **$673,600.00** in Rail ramp storage charges that have not been paid. Exhibit D identifies key information related to those unpaid Rail ramp storage charges, including identification of Invoice No. and Date, B/L (sea waybill) number, Equipment (Container) No., Shipper and Consignee Names, Port of Discharge, and Amount due.

      e.    **Miscellaneous Billing and Collection ("B&C")**: Attached hereto as **Exhibit E**, and incorporated herein by reference, is a chart detailing the seventy-two (72) individual B&C charges at issue in this dispute. B&C charges reflect miscellaneous charges that HMM incurred at terminal facilities on the shipper's and SEA's behalf, which are then billed and passed through to SEA for collection and reimbursement. Between April 2021 and October 2022, HMM invoiced SEA a total of **$102,038.80** in miscellaneous B&C charges that have not been paid. Exhibit E identifies key information related to those unpaid B&C charges, including identification of Invoice No. and Date, B/L (sea waybill) number, Equipment (Container) No., Shipper Name, Consignee Name, Port of Discharge, Cost Code Description, and Amount due.

---

[3] See footnote 2, *supra*.

25. As a result of the failure of Defendant to make payment of the charges incurred, HMM has incurred damages, including without limitation and in relation to, detention, demurrage, chassis charges and rail ramp charges and other miscellaneous charges and fees, which are summarized in the following table:

| DETENTION | $11,267,245.00 |
|---|---|
| DEMURRAGE | $8,480.00 |
| CHASSIS | $948,070.00 |
| RAIL RAMP STORAGE | $673,600.00 |
| B&C (MISCELLANEOUS) | $102,038.80 |
| **TOTAL** | **$12,999,433.80** |

26. As of the date of this Complaint, SEA owes an aggregate principal balance of at least $12,999,433.80, excluding accrued prejudgment interest.

27. HMM and SEA agreed in a written Tolling Agreement, effective January 1, 2023, that "any and all limitations periods, statutes of repose, laches, or other time limitations (whether statutory, equitable, contractual, or otherwise and including, but not limited to, 46 U.S.C. § 41301(a)), with respect to the Claims, or any claims arising from the same transactions or occurrences that are the basis for the Claims, are tolled" between January 1, 2023 and June 30, 2024 (the "Tolling Period") and that "that the Tolling Period shall not be assessed or relied upon in any way in computing the running of time under any applicable statute of limitations, laches or any other defense with regard to the Claims, or any claims arising from the same transactions or occurrences that are the basis for the Claims." The Tolling Agreement encompasses the claims alleged by HMM in this action, all of which have been timely asserted under the applicable statutes of limitations and laches periods.

## FIRST CAUSE OF ACTION

## BREACH OF MARITIME CONTRACT

## (AGAINST DEFENDANT SEA)

28. HMM re-alleges and incorporates by reference the allegations contained in paragraphs 1-27 inclusive.

29. HMM carried cargo from ports in Asia to ports in the U.S. for shippers, including the parent of Defendant SEA, Samsung Korea, and various other of the Samsung Affiliates (also subsidiaries of Samsung Korea), in accordance with the terms and conditions of the sea waybills issued by HMM to Defendant SEA.

30. Under federal maritime law, the sea waybills and incorporated terms and conditions of HMM's Standard Bill of Lading constitute a binding contract of carriage to which SEA is bound as a party. To the extent not superseded by the terms of the sea waybills and Standard Bill of Lading, applicable provisions of HMM's published tariffs (as alleged and identified above) also constitute part of the contract of carriage.

31. SEA manifested its agreement to the terms and conditions of carriage by, among other actions, engaging in a multi-year course of conduct both before and during the time periods at issue in this action (1) accepting delivery of goods in the United States as the designated consignee and agent of Samsung Korea and various of the Samsung Affiliates, and (2) paying for demurrage, detention, rail ramp storage, chassis costs, and other miscellaneous terminal, railyard, trucking, drayage, and shipping-related costs pursuant to invoices issued by HMM and accepted by SEA in transactions structured substantially similar to the shipping transactions at issue in this action.

32. As more fully alleged above, under Article 1(F) of HMM's Standard Bill of Lading, SEA is jointly and severally liable with the shipper and consignor to HMM for "payment of all freight, demurrage, damages for detention, and for the performance of the obligations of any of them" under the sea waybills.

33. HMM fully performed all of its obligations under the contracts of carriage, including all service contracts and sea waybills, by accepting, transporting, and delivering the shippers' cargo as agreed.

34. Under the terms of the sea waybills, including but not limited to Articles 23(B) and 23(C) of HMM's Standard Bill of Lading (see Exhibit F hereto), Defendant SEA, as consignee, also agreed that HMM is entitled to payment of "all freight and other charges due hereunder," which "shall be made in full and in cash without any offset or deduction."

35. Despite due demand by HMM, Defendant SEA breached its contractual obligations by failing to make timely payment of demurrage, detention and other charges itemized in Exhibits A through E attached hereto.

36. As a proximate cause of Defendant SEA's breaches, HMM has suffered damages, and Defendant is liable to HMM, for an amount according to proof at trial, but no less than $12,999,433.80, plus applicable prejudgment interest.

37. Under the terms of the sea waybills, HMM is also entitled to recover from Defendant attorneys' fees, expenses, and costs to collect the charges. (See Exhibit F, Art. 23(I).) Those fees, expenses, and costs will be proven at trial and/or during appropriate post-trial proceedings.

## SECOND CAUSE OF ACTION
## GOODS AND SERVICES RENDERED
## (AGAINST DEFENDANT SEA)

38. HMM re-alleges and incorporates by reference the allegations contained in paragraphs 1-37, inclusive.

39. As more fully alleged above, SEA, its parent Samsung Korea, and the Samsung Affiliates, requested, by words and conduct, that HMM perform shipping services and deliver goods for the benefit of SEA.

40. HMM performed the services rendered and delivered the goods as requested as described in the transaction summaries set forth in the attached Exhibits A through E, inclusive.

41. SEA has not paid HMM for the services rendered and goods delivered.

42. HMM therefore is entitled to the reasonable value of the services and goods that were rendered and provided to SEA, which HMM asserts, subject to proof at trial, is no less than $12,999,433.80.

WHEREFORE, HMM Co., Ltd. prays for judgment against Defendant Samsung Electronics America, Inc. as follows:

1. For general damages in an amount to be proven at trial, but in no event less than $12,999,433.80, plus accruing interest, costs and fees;

2. For recovery of expenses and costs to collect the charges at issue in this action, in an amount to be proven at trial;

3. For cost of suit, including reasonable attorneys' fees, incurred herein; and

4. For such other and further relief as the Court may deem just and proper.

Dated: July 1, 2024         LEE, HONG, DEGERMAN, KANG & WAIMEY

By: /s/ Eric D. Olson
    Eric D. Olson
    Joseph S. Park
    Soojin Youn

Attorneys for Plaintiff HMM Co., Ltd.